## THE CHEROKEE LODGE vs. WHITE.

[Warner, Chief Justice, being engaged in presiding over the senate organized as a court of impeachment, did not sit in this case.]

1. In claim cases in the justice courts, unless it appears from the record that the plaintiff in execution was claiming interest—the principal being fifty dollars—or that the property claimed was worth more than fifty dollars, the remedy by *certiorari* will be upheld.

2. Though a woman be married prior to the constitution of 1868 and the woman's act of 1866, yet her acquisitions subsequent to those enactments are her own separate estate, and the marital rights of her husband do not attach thereto.

3. The question of fact being in doubt whether the money which paid for the property claimed was acquired before or subsequent to the act of 1866, the superior court was right to remand the case for a new trial.

Jurisdiction.　*Certiorari.*　Husband and wife.　New trial.　Before Judge LESTER.　Cobb Superior Court.　November Term, 1878.

White filed his petition for *certiorari* against the Cherokee Lodge. The petition alleged that "a *fi. fa.* of fifty dollars," based upon a justice court judgment rendered January 10, 1877, in favor of the Lodge *vs.* Walker *et al.*, was, on July 18, 1878, levied on a wagon, which was claimed by White; and that on the trial it was found subject. The *fi. fa.* is not copied in the record. In the bill of exceptions it is stated that it appeared to the court that the cause in the court below was "a claim case where a *fi. fa.* in favor of Cherokee Lodge *vs.* J. M. Walker *et al.*, for fifty dollars principal debt, with interest and cost of suit thereon, was levied," etc.

From the petition and answer it appeared that White claimed by virtue of a purchase from Mrs. Walker, the wife of one of the defendants in *fi. fa.*; that her husband had bought the wagon for her with money furnished by her in 1874; and that she was married prior to the "married woman's act" of 1866. But the evidence left it doubtful whether the purchase money of the wagon came from sources arising for her before or after that act. The justice trying the claim case held that having married before the act of 1866, "no property received by the wife at any time, even subsequent to the act of 1866, can be her separate estate, except in trust." This ruling was alleged as error in the petition for *certiorari.* The value of the wagon was not shown.

Upon the hearing in the superior court, defendant in *certiorari* moved to dismiss the case because the amount involved was more than $50.00, and the remedy was by appeal. The court overruled the motion.

The court sustained the *certiorari*, and ordered a new trial. Defendant in *certiorari* excepted.

W. T. & W. J. WINN, for plaintiff in error.

CLAY & IRWIN, for defendant.

JACKSON, Justice.

1. The petition for *certiorari* alleged that the *fi. fa.* levied was for fifty dollars; the answer does not set out the *fi. fa.* at all, nor does it appear by answer or petition that plaintiff in execution claimed any interest. The bill of exceptions sets out, it is true, that the *fi. fa.* was for fifty dollars and interest and costs, but it does not aver that the plaintiff was claiming any interest. So far as appears to us the plaintiff was pressing his *fi. fa.* for fifty dollars, and as it does not appear that the wagon was worth more than fifty dollars, the court was right not to dismiss the *certiorari*. *Dykes vs. Woolsey*, 62 *Ga.*, 608.

2. The justice of the peace or notary was wrong in ruling that because the marriage took place prior to 1866, the date of the act vesting in married women their own acquisitions—therefore this woman from whom the claimant derived title to the wagon had no title to convey. If she got the money as her separate estate after 1866, no matter when she married, it was hers, and what she bought with it was hers, and she could convey good title. 57 *Ga.*, 412.

3. Some of the acquisitions of the wife were made before, others after the act of 1866; and there was no positive proof that money acquired by her since the act of 1866 paid for the wagon. From the answer of the justice to the *certiorari*, she kept it mixed; but as he decided broadly that if she married before 1866, it was all her husband's, he did not necessarily pass on the doubtful question of what money paid for the wagon—whether that acquired before the act of 1866, which would make the wagon her husband's, and subject it, if he had reduced to possession

the property that paid for it, or that acquired since the act of 1866, which would make it hers, no matter what he did about it. There being clear error on this legal point in the justice court against the plaintiff in *certiorari*, and it being the province of that court to decide on the question of fact, to-wit: what money of the wife was in this wagon—that she got before or that she got after the woman's right act of 1866 —the superior court was right, in our judgment, to sustain the *certiorari* and send the case back for a new trial.

Judgment affirmed.

[WARNER, Chief Justice, being engaged in presiding over the senate organized as a court of impeachment, did not sit in this case.]