# CASES ARGUED AND DETERMINED

IN THE

# Supreme Court of Georgia,

## AT ATLANTA.

### SEPTEMBER TERM, 1883.

PRESENT—JAMES JACKSON, . . . . . . . . . CHIEF JUSTICE.
SAMUEL HALL, . . . . . . . . . ASSOCIATE "
M. H. BLANDFORD, . . . . . . . . ASSOCIATE "

### COMER & COMPANY vs. ALLEN.

1. The charge fully and fairly submitted the case, and the verdict was supported by the evidence.

2. As to her separate property, a wife is a *feme sole.* If her husband has become indebted to her in connection therewith, she may take a mortgage to secure her claim, and she will have the same rights as against other creditors of the husband as if she were not his wife; provided the debt so secured is a *bona fide,* subsisting debt, and the transaction is without fraud. Whether such is the case is for the jury.

3. Where a marriage took place prior to the passage of the act of 1866, the husband had the right to reduce his wife's property to possession as his own, and he could still do so after the passage of the act; but if thereafter he reduced it to possession for her, as her estate, and in consideration of having made use of it for his own purposes, gave her a mortgage *bona fide* to secure the debt so created, the lien was good, and took precedence of the subsequently acquired liens of other creditors, although he may have been in failing circumstances.

4. Although a debt from a husband to his wife may have been barred by the statute of limitations, it could be revived by written acknowledgment. The statute does not extinguish the debt; it only bars the remedy. The making of a new promise by the hus-

v 72–2

band to the wife is not *per se* fraudulent, but is a circumstance to be considered in investigating the fairness of the transaction.

(*a.*) It appears that the holders of the junior mortgage in this case had notice of the mortgage of the wife, and it was included in the face of their own mortgage. Were they estopped from denying the validity of her mortgage? *Quære.*

5. If a request to charge was not proper as a whole, it might have been refused; but it did no harm in this case that the portions which were proper were given by the court, who stated that they were given at the request of counsel.

November 20, 1883.

Debtor and Creditor. Husband and Wife. Fraud. Statute of Limitations. Mortgage. Notice. Practice in Superior Court. Before Judge STEWART. Monroe Superior Court. February Term, 1883.

Reported in the decision.

DENMARK & ADAMS; BERNER & TURNER, for plaintiffs in error.

JOHN I. HALL; A. D. HAMMOND; T. B. CABANISS, for defendant.

HALL, Justice.

On the 11th day of November, 1881, Mrs. Martha E. Allen took from her husband, G. D. Allen, a mortgage on the land and property therein mentioned, to secure a note of even date with the same, given for a past indebtedness from the husband to her, amounting to $2,715. This mortgage was duly recorded, and was foreclosed. On the 22d day of November, 1881, G. D. Allen executed and delivered to H. M. Comer & Co. a mortgage on the same property, to secure a large debt due H. M. Comer & Co., from Dumas & Allen, of which latter firm Allen was a partner. Prior to and at the time of the execution of this mortgage, notice was given to Comer & Co., through the agent and attorney conducting the business for them, not

only of Mrs. Allen's mortgage but of others of older date, upon the same premises. This last mortgage was recorded, and likewise foreclosed. When the mortgaged land was levied on and about to be sold, Mrs. Allen placed in the hands of the sheriff the *fi. fa.* issuing upon the judgment of foreclosure of the mortgage in her favor, for the purpose of claiming the proceeds of the sale. Comer & Co. filed an affidavit of illegality to her *fi. fa.*, contesting its validity, and set forth in said affidavit the following grounds:

(1.) That said George D. Allen, at the time of giving to his said wife, Mrs. Martha E. Allen, the said mortgage, was not *bona fide* indebted to his said wife in any way whatever.

(2.) That said George D. Allen signed and executed said mortgage in favor of his wife (if the same was ever executed at all) for the sole purpose of defrauding his creditors, and not for the purpose of securing to his wife any just or *bona fide* debt.

(3.) That said mortgage was signed and placed on record after the failure in business of the said Dumas & Allen, for the sole purpose, on the part of said Allen, to defeat the payment of the just debts of his creditors and the creditors of his firm.

(4.) That said mortgage in favor of the said Mrs. Martha E. Allen is without any consideration to support it.

(5.) That, as deponent is informed and believes, while said mortgage purports to have been signed, sealed and delivered by said G. D. Allen to his said wife on the 11th day of November, A. D. 1881, the same was not, in fact, delivered on said day, and was not delivered at the time said G. D. Allen gave to deponent's firm his said mortgage bearing date the 22d day of November, A. D. 1881.

(6.) That said G. D. Allen, at the time of executing the mortgage to H. M. Comer & Co. (as deponent believes), had the said mortgage in favor of his said wife in his own possession and control, and had not then delivered the same to his said wife.

(7th.) That on or about the time that said Allen executed his said mortgage to deponent's said firm, he stated that the consideration of the mortgage to his said wife was for money which he, the said G. D. Allen, had borrowed or otherwise obtained from the father of his said wife, which money he had used in his business as his own, and without the knowledge of these contestants or his other creditors.

(8.) That if in equity the said G. D. Allen ever owed to his wife the said sum of money, or any part thereof, by reason of the fact of obtaining the same from his wife's father, said claim was, at the time of giving her the said mortgage, barred by the statute of limitations; and that, if the said Mrs. Martha E. Allen ever had any legal claim on the same against her husband, she had allowed said Allen to use the same in his business as his own, and not as the debtor of his said wife; and that it is a fraud on his creditors now to permit her to take the same from his creditors, particularly after his failure in business, and when his said wife had never before made any claim on her said husband for the same.

"And deponent further says that the property, on which his said firm holds said mortgage, is insufficient to pay off the debt of said H. M. Comer & Co., and that said George D. Allen is insolvent. And the said H. M. Comer & Co. herewith tender bond with good security, in terms of the law, and pray that the issue here made may be returned and determined as the law provides.

"And for further grounds of contest, deponent says that, on the 18th day of April, 1881, the said G. D. Allen borrowed of H. M. Comer & Co. the sum of three thousand dollars, for which he gave the firm note of Dumas & Allen, due the 15th day of October after the date thereof; and afterwards a further sum of three thousand dollars, giving the firm note of Dumas & Allen, dated April 30th, 1881, and due the 15th November thereafter, with 8 per cent interest; and the said Dumas & Allen also borrowed on

open account the sum of six thousand dollars; and at the time said loans were made, the said mortgagors stated to the said H. M. Comer & Co. that there was no encumbrance on said property, and said loans were made on said statement, and that said mortgage, given by said G. D. Allen to his wife is, in law, a fraud upon the rights of these deponents, they having given said credit upon the statement of the said G. D. Allen that said property was unencumbered, and that his said firm was solvent, when, in truth, it was insolvent."

These several grounds of illegality were traversed and denied by Mrs. Allen; and upon the trial of the issue thus formed, much testimony was taken; and the testimony being closed, the presiding judge delivered the following charge to the jury:

"If Mrs. Allen had a valid, legal, subsisting debt against her husband, and if she, in a transaction free from fraud, took a mortgage from her husband to secure the same, then you would be authorized to find that said mortgage *fi. fa.* proceed. But I charge you, if the said plaintiff, Mrs. Allen, did not have a valid, legal, subsisting debt, or if she did hold a debt against her husband, if she took a mortgage to secure the same, which was not free from fraud in a transaction between her and her husband, then you would not be authorized to find that the *fi. fa.* proceed, but would find in favor of the defendant, Comer.

"The defendant, Comer, by his illegality insists that the said G. D. Allen was not due his said wife any sum of money whatsoever,. If this be true, then, although a mortgage may have been given, the same would be without consideration, and would be void, and you would so find.

"Again, the defendant, Comer, insists that the said transaction of giving the mortgage by the said G. D. Allen, to the said plaintiff, was fraudulent and void, as to the creditors of the said G. D. Allen. Fraud will not be presumed, but being subtle in its nature, slight circumstances will carry conviction of its existence; and transactions between husband and wife should be scanned with care, and should be free from fraud, and fair in every particular; and in order to determine whether the transaction is free from fraud or not, you would be authorized to consider all the circumstances proved in the case.

"You might consider whether the debt claimed by Mrs. Allen was or not barred by the statute of limitations at the time of giving the mortgage. You might consider whether the debt was evidenced by

note, account, or other writing. You might consider whether the mortgage was given as the result of an agreement between Mrs. Allen and her husband, or whether the same was given freely, voluntarily.

"You might consider whether or not said mortgage included all the defendant's property or not. You might consider whether said mortgage was given to hinder or delay creditors, or whether the same was given fairly and in good faith; and from all those considerations and facts together, and from all the facts and circumstances proved in the case, and find and determine whether or not the mortgage as given was a fraud upon Comer & Co., as a creditor, by G. D. Allen, and if so, you would find in favor of Comer & Co. But I charge you, if you find that G. D. Allen·was indebted to his wife, the plaintiff, a valid and subsisting debt, the fact that he was insolvent at the time of making the mortgage, would not invalidate the same if the transaction was free from fraud; as Allen (although insolvent) under the law, had the right to prefer his creditors; and if you therefore find that Allen was insolvent, yet if the transaction was free from fraud, you would be authorized to find in favor of Mrs. Allen.

"I have been requested to charge you as follows, by the counsel for plaintiff, Mrs. Allen:

"The first question for you to determine is, was G. D. Allen indebted to his wife? If you find that Allen was indebted to his wife, then your next question ·is, was this· mortgage made in good faith? If Allen made the mortgage to his wife with the intention to hinder and delay his creditors, and if his wife knew of such intention, or had grounds for reasonable suspicion that such was the intention of Allen, then the mortgage would be void as to creditors. But, although it may have been the intention of Allen to hinder and delay his creditors, yet if his wife did not know, or have reasonable grounds to suspect, that the intention of Allen was to delay or defraud creditors, then the mortgage would be good. A debtor may prefer any creditor, whether such be his wife or another person. The rule is, that transactions between husband·and wife will be scanned closely, but fraud will not be presumed in any case, but being in its nature subtle, slight circumstances may be sufficient to establish its existence. There is a moral obligation on the part of a debtor to pay a debt that is barred by the statute of limitations, and if a contract such as a note and mortgage ·are given to pay such a debt, it is as binding as if . the debt had never been barred. If you believe from the evidence that the money received by Allen arose from the sale or use of Mrs. Allen's property by her father after 1866, then the father of Mrs. Allen could not give the money to Mr. Allen.

"As requested by counsel for Comer & Co , I charge you, that transactions between husband and wife by which the rights of cred-

itors are affected, should be scanned by the jury closely, and the *bona fides* of the transaction should be clearly established. The law looks with stricter scrutiny on such transactions than it does on transactions between other persons. In considering the *bona fides* of the transaction, the jury may consider all the facts proved in the case.

"Again, I charge you that an open account becomes barred within four years after the same becomes due; and if the debt held by Mrs. Allen against G. D. Allen was an open account, the same would become barred after the lapse of four years, and Allen would be under no legal liability to pay the claim, and if the same was sued for collection, and the statute of limitations was pleaded, the same could not be collected. But as I have already charged you, if a debt is once barred by the statute of limitations, and afterwards renewed by giving a note or mortgage, the same may be enforced in law, if the transaction was free from fraud, as I have already charged you."

The jury found in favor of Mrs. Allen, that the mortgage was valid, and the execution should proceed; and thereupon Comer & Co. moved for a new trial, upon the following grounds, contained in the original motion:

(1.) The verdict is contrary to law.

(2.) The verdict is contrary to the evidence.

The motion was amended, and the following grounds approved as correct, taken in the amendment:

(1.) Because the court erred in this: The court, in enumerating the circumstances which the jury might consider in determining the *bona fides* of the transaction between said Mrs. Allen and her husband, G. D. Allen, omitted to state the failing condition of said Allen at the time of the giving of said mortgage, said fact being, as movants insist, a very important fact. The charge of the court on this point was as follows: "You might consider whether the debt claimed by Mrs. Allen was or was not barred by the statute of limitations at the time of giving the mortgage; you might consider whether the debt was evidenced by note, account or other writing; you might consider whether the mortgage was given as the result of an agreement between Mrs. Allen and her husband, or whether the same was given freely and voluntarily; you might consider whether or not the said mortgage included all the defendant's property or not; you might consider

whether said mortgage was given to hinder or delay creditors, or whether the same was given fairly and in good faith; and from all these considerations and facts, and from all the facts and circumstances proved in the case, and find and determine whether or not the mortgage as given was a fraud upon Comer & Co., as a creditor of G. D. Allen, and if .so, you would find in favor of Comer & Co."—And movants show that the court omitted to state the failing condition of Allen as a suspicious fact for them to consider, after he had been so requested to do, as will appear hereafter.

(2.) Because the court erred in charging the jury as follows, when so requested by counsel for Mrs. Allen: " If you believe from the evidence that the money received by Allen arose from the sale or use of Mrs. Allen's property by her father after 1866, then the father of Mrs. Allen could not give the money to Mrs. Allen;"—said charge not being sustained by the evidence.

(3.) Because the court erred in this: Being requested by counsel for Comer & Co. to charge the jury as follows: " We request the court to charge the jury that transactions between husband and wife, by which the rights of creditors are affected, should be scanned by the jury closely, and the *bona fides* of the transaction clearly established. The law looks with stricter scrutiny on such transactions than it does on transactions between other persons. In considering the *bona fides* of the transaction, the jury may consider the facts, if such are the facts, that the debt was barred by the statute of limitations; the length of time the debt had been due; the fact as to whether a note or other evidence was given by the husband to the wife; that nothing was ever agreed to between the wife and husband as to the debt or the payment; that at the time of the giving of the note and mortgage, the wife was not present; that the terms of the note—when it should be due, how much it was for, how it was to be secured, were stated by her husband, who directed how the transaction should be consummated;

that no note was given the wife until the husband was in a failing condition, of which fact the wife was informed at the time; also the fact that, at the time of giving the note, the husband executed a mortgage on his property, which covered all his property, and left nothing for his creditors; you may consider all these facts, if such are facts, in determining the *bona fides* of the transaction."—The court stated to the jury that he had been requested to charge as follows by the counsel for H. M. Comer & Co.: "The law looks with stricter scrutiny on such transactions than it does on such transactions between other persons. In considering the *bona fides* of the transaction, the jury may consider all the facts proved in the case."—Movants say that the court erred in stating that he had been so requested by the counsel for Comer & Co. to charge; and further, that he erred in changing, amending and reducing the request, and then giving it to the jury as he did, stating that it was the request of counsel for H. M. Comer & Co.

(4.) Because the court erred in not giving the request of counsel for H. M. Comer & Co., as set out in the third ground of this motion, entire and full as it was presented by said counsel.

(5.) Because the court erred in this : He was requested by counsel for H. M. Comer & Co. to charge as follows: "I charge you that an open account becomes barred within four years after the same becomes due ; and if the debt held by Mrs. Allen against G. D. Allen was an open account, the same would become barred after the lapse of four years, and Allen would be under no legal liability to pay the claim, and if the same was sued for collection and the statute of limitations was pleaded, the same could not be collected." The court stated that he had been requested so to charge by the counsel for H. M. Comer & Co., and to the charge added the following qualification: " But, as I have already charged you, if a debt is barred by the statute of limitations, and afterwards renewed by giving a note or mortgage, the same may be enforced in law, if the

transaction was free from fraud, as I have already charged you."—The court erred in adding this qualification to the request, after stating that it was the request of H. M. Comer & Co.

(6.) Because the court erred in not giving the request of the counsel for H. M. Comer & Co., as set forth in the fifth ground of this motion, without the qualification also set forth in said ground.

(7.) Because the court erred in refusing to charge the jury as follows, being so requested by the counsel for H. M. Comer & Co.: "That the giving of a note and mortgage by a husband to the wife in settlement of a barred debt, when the husband was in a failing condition, of which fact the wife was cognizant, and when said mortgage left nothing to the creditors, such a transaction is *prima facie* fraudulent as to creditors, though it may be good as between husband and wife, and the facts should be such as to rebut the presumption of fraud clearly, and show the *bona fides* of the transaction clearly."

(8.) Because the court erred in refusing to charge the jury as follows, when so requested by the counsel for H. M. Comer & Co: "That the giving of a mortgage by a husband to his wife to secure a barred debt while the husband is in a failing condition, of which his wife is cognizant, when the mortgage thus given, if any such was given, left nothing for the creditors, is a fraud in law as to creditors, and will be set aside as to them, though good as to his wife."

(9.) Because the court erred in refusing to charge the jury, when so requested by the counsel for H. M. Comer & Co., as follows: "That an insolvent debtor cannot voluntarily, to the prejudice of his creditors, execute a mortgage on his property, to secure a debt to his wife barred by the statute of limitations."

This motion was refused, and this writ of error was filed to the refusal.

There was little conflict as to the main facts in evidence; the principal dispute was as to the conclusions to be drawn from the facts.

1. We think the case was fully and fairly submitted to the jury, under the view entertained by the court of the law applicable to the several issues made, and that the verdict of the jury, though not absolutely required, is sustained by the evidence. We are further of opinion that the charge, in the main, stated the law correctly, and in effect covered and fully met so much of the written requests of the plaintiff in error as should have been given to the jury.

2. As to her separate property, the wife is a *feme sole*, and may make her husband, like any other person, her creditor. Code, §1783. Every restriction the law places upon the disposition and use of her separate estate is imposed for her protection and benefit,—as, her inability to bind her property by a contract of suretyship, or to part with it to pay her husband's debts, or to sell and convey it to him or her trustee without the sanction and support of the superior court. Code, §§1783, 1785, 2337.

Prior to the passage of the act of 1866, whereby all the property at the time of the marriage, and all such as is given to, inherited and acquired by the wife during the coverture, is declared to be her separate property, to vest in and belong to her, and not to be liable for the payment of any debt, default, or contract of the husband, she had the power of disposing of her separate estate, as a necessary incident of the ownership of the property, and she might, by the terms of her ante-nuptial marriage settlement, entered into fairly and without fraud, make her husband her debtor. In the leading case of Magniac vs. Thompson, decided by the Supreme Court of the United States, 7 Peters, 348, it was declared "Upon principle and authority, to make an ante-nuptial settlement void as a fraud upon creditors, it is necessary that both parties should concur in, or have cognizance of the intended fraud. If

· the settler alone intend a fraud, and the other party have no notice of it, but is innocent of it, she is not and cannot be affected by it. Marriage, in contemplation of the law, is not only a valuable consideration to support such a settlement, but is a consideration of the highest value, and from motives of the soundest policy, is upheld with a strong resolution. The husband and wife, parties to such a contract, are therefore deemed, in the highest sense, purchasers for a valuable consideration; and so that it is *bona fide*, and without notice of fraud, brought home to both sides, it becomes unimpeachable by creditors.

" Fraud may be imputed to parties, either by direct co-operation in the original design, at the time of its concoction, or by constructive co-operation from notice of it, and carrying the design, upon notice, into operation.

"Among creditors equally meritorious, a debtor may conscientiously prefer one to another; and it can make no difference that the preferred creditor is his own wife."

The marriage settlement was executed in this instance in 1825. Four years thereafter, on the eve of the husband's insolvency, and when judgments for large amounts were about to be entered against him, he transferred a large amount in notes to the trustee of his wife, as was alleged, in satisfaction of the obligation incurred by this settlement. The husband's creditors sought to reach these notes, and subject them to the payment of their debts, charging that the transfer was covinous and designed to benefit the husband and his family to their detriment. The circuit court directed the jury, that if it was done in order to comply, in part, with the agreement, it was not fraudulent. If it was colorable, made with the intention of covering and concealing so much under pretence of the marriage articles, for the husband's use, and so received by the trustee, it was legally fraudulent as to creditors; but if delivered with such intention and not so accepted, then the trustee might not only fairly apply it to the trust fund, but was bound so to do. Though it may have been done on the

eve of the judgment confessed, that would make no differ-
ence; it being to carry into effect the marriage agreement
of December, 1825.

The Supreme Court say of this part of the charge, " We
cannot perceive any error " therein.   " The wife became a
purchaser and a creditor of her husband in virtue of the
marriage articles; and if the delivery of the notes was
made in part performance of these articles, *bona fide*, and
without fraud, it was a discharge of a moral as well as of
a legal duty."   7 Pet., 348, 396.   Substantially the same
principles were upheld by this court in *Marshall vs. Mor-
ris*, 16 *Ga.*, 368.

With the exception of the restrictions above mentioned,
the wife sustains the same relation to property acquired
under the act of 1866 as she does where the entire interest
vests in her under a marriage settlement, and has over it
the same powers and rights, and can subject it to the same
liabilities.  In the case at bar, the marriage took place prior
to the act of 1866, but the property was not reduced into
possession of the wife until afterward, and then, it is said,
the husband did not take possession of it as his own estate,
but as his wife's.   This question, with all the others bear-
ing upon the case, was submitted to the jury, and they
were instructed to scrutinize closely every circumstance
connected with these dealings between husband and wife,
from their commencement to their termination.   This was
in exact accordance with the law as laid down by this
court.   In *Booker vs. Worrill*, 55 *Ga.*, 332, it was decided
that a husband may become indebted to the wife for the
rents of her separate estate, and if such indebtedness is
*bona fide*, it is a valuable consideration to support a deed
from him to her; that, in a contest between her, as claim-
ant of the property thus conveyed, and the creditors of
the husband, the questions as to the *bona fides* of the in-
debtedness, and fraud in the transactions, are for the jury,
who should closely scan the same, and if found, upon such
scrutiny, to be fraudulent, it should be set aside as against

the creditors; but if the debt should appear to be a real *bona fide* subsisting debt, and the conveyance was made to pay the same, then the transaction should be upheld.

"The husband's right to reduce the wife's property into possession, before the act of 1866," was held by this court in *Sperry & Niles vs. Haslem*, 57 *Ga.*, 412, to be a vested right, and that after the act, if he reduced the same to possession as his own estate, it thereby became his property, and was subject tohis debts; but if he reduced it to possession for her, and as her estate, after the passage of that act, and in consideration of having made use of it for his own purposes, conveyed to her a tract of land in lieu thereof, the title to the land vested in her, and his creditors could not subject the same to the payment of his debts. *Archer et al. vs. Guill*, 67 *Ga.*, 195, is as much in point as the foregoing cases.

The only difference between those cases and this is, that the debt to the wife's claim here, at the time of executing the mortgage, was barred by the statute of limitations. This, it was contended, made the transaction *per se* fraudulent, but the court did not so think, and refused so to charge the jury. He did, however, instruct them that it was a circumstance to be considered in investigating the fairness of the transaction. This instruction was doubtless correct, unless, as contended by affiant's counsel, the debt was not a subsisting debt, and that the new promise rested upon nothing more than a moral consideration. Neither of these positions is, in our opinion, tenable. The statute of limitations does not extinguish the debt, it only bars the remedy. This the promisor may revive by written acknowledgment and promise to pay the same, either before or after the bar of the statute attaches. The statute in either case commences to run from the acknowledgment. Code, §1950, sub-sec. 6, §2934. That the consideration for this new promise is not merely a good consideration in contradistinction to one of value, is evident from the Code, §2936, which in express terms declares that "a new promise

revives or extends the original liability · it does not create a new one." It is doubtless upon this principle that an administrator is justified, by a like express enactment, in relieving a debt of his intestate, barred after his death, from the operation of the statute, and unless it is made to appear that the claim was in reality unjust, he is discharged from liability to the distributees. Code, §2541.

The fact that the debtor was in failing circumstances did not, as we have seen, prevent his honestly preferring one of his creditors. (Code, §1953); and it can make no difference, as we have likewise seen, that the preferred creditor is the debtor's own wife. At the time this mortgage to the wife was executed, it was denied that the debtor was insolvent, and this, among other issues, was submitted to, and found by, the jury. It is also evident, from the testimony of Cabaniss and Allen, that when Comer & Co. took the mortgage on which they rely in this suit, they had notice of Mrs. Allen's mortgage; in fact, the mortgage itself recites prior incumbrances upon the property, amounting to $5,200, and these witnesses swear that Mrs. Allen's mortgage went into that thus recited, to make up the amount, and that Comer & Company's agent had notice thereof. While we are inclined to think that these facts may preclude Comer & Co. from denying the validity of Mrs. Allen's mortgage, (*Long et ux. vs. Bullard*, 59 *Ga.*, 355), yet as the decision of the question is not indispensable to the final disposition of this case, we do not determine it. It was, however, cogent evidence, in connection with other circumstances, of the openness and fairness of these dealings between husband and wife, and was doubtless so treated by the jury.

There was no error in refusing such portion of affiants' requests to charge as were rejected by the court; they summed up only such facts in evidence as were favorable to affiants' view, while they omitted all mention or allusion to such as tended to elucidate and sustain the view of the opposite party.

We do not perceive how the affiants were injured by the statement of the court that the portions of these requests submitted were given at their request. If the entire charge requested was not proper, it might have been declined altogether, and in view of the objection here urged, this would perhaps have been the better course.

Judgment affirmed.